**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| Abeer AbouYabis, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:25-cv-02438-ELR-CCB |
| Emory University et al., | ) |
| | ) |
|      Defendants. | ) |
| | ) |

**DEFENDANT JASON WEIDEN'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS  MOTION TO DISMISS PLAINTIFF'S FIRST**
**AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant
Jason D. Weiden ("Dr. Weiden") respectfully moves this Court to dismiss all claims
asserted against him in Plaintiff Abeer AbouYabis's First Amended Complaint. As
set forth below, AbouYabis fails to state a claim upon which relief can be granted as
to each count alleged against Dr. Weiden.

## **INTRODUCTION**

AbouYabis brings this baseless and retaliatory action in an effort to cast
herself as a victim, when in reality she was terminated from Emory University
("Emory") for her own antisemitic conduct—specifically, for publicly glorifying the

October 7, 2023 Hamas-led terrorist attacks (the "October 7 attacks"). Those attacks, which involved the brutal rape, murder, and kidnapping of innocent civilians, resulted in the most horrific massacre of Jews since the Holocaust. Hamas, both the governing authority in Gaza and a U.S. designated Foreign Terrorist Organization, invaded Israel's borders and began a war that continues only because Hamas refuses to release innocent hostages and disarm. While AbouYabis now attempts to distance herself from her track record of supporting Hamas, her own public statements tell a different and undeniable story. Her Amended Complaint, spanning over 100 pages, reads less like a legal pleading and more like an antisemitic diatribe.

Rather than accept responsibility for her own words, AbouYabis seeks to weaponize the judicial system to punish those who criticized her. She has sued not only Emory and its administrators, but also an array of private individuals, journalists, and advocacy organizations—many of whom had no role whatsoever in her termination. Among the targets of this meritless lawsuit is Dr. Weiden, a former colleague whom AbouYabis baselessly accuses of "spearheading a campaign to have her fired." AbouYabis's conclusory and speculative claims against Dr. Weiden fall far short of meeting the most basic pleading standards under federal law.

Nevertheless, AbouYabis asserts five separate causes of action against Dr. Weiden: (i) hostile work environment, (ii) conspiracy to violate civil rights, (iii) defamation, (iv) tortious interference with contract, and (v) false light invasion of

privacy. Each of these claims is legally defective and factually unsupported. All should be dismissed with prejudice. Moreover, given the inflammatory nature of the allegations, the absence of any well-pleaded facts to support them, and the clear antisemitic motivation behind the lawsuit, this Court should award Dr. Weiden his attorneys' fees and costs pursuant to 28 U.S.C. § 1927 and its inherent authority to sanction bad-faith litigation.

## FACTUAL BACKGROUND

In the immediate aftermath of the October 7 attacks, AbouYabis took to social media to express her support for Hamas and its actions. She posted: "They got walls we got gliders / Glory to all resistance fighters," a clear and deliberate reference to Hamas's use of motorized hang gliders to infiltrate Israeli territory and perpetrate mass atrocities. Am. Compl. ¶132. In other posts, AbouYabis accused Israel of genocide and apartheid, equated Israelis to Nazis and American slaveowners, and even circulated an image of Adolf Hitler captioned: "Jews are not people; they are animals," which she shared as part of a  purported "political statement." *Id*. Am. Compl. ¶¶ 76–95.

On October 17, 2023, Emory Healthcare publicly responded to AbouYabis's conduct, issuing the following statement:

> We are aware of the antisemitic comments made on a private social media account by one of our physicians who is an assistant professor at the Emory

University School of Medicine. We are deeply sorry for the pain these comments may have inflicted. Winship Cancer Institute and Emory Healthcare are firmly committed to providing unbiased and quality patient care and we condemn any language or actions that threaten or compromise that value … There is no place in our community for language and behavior based in hatred, that incites violence, and that is counter to the values that unite us as educators and health practitioners.[1]

In short, Emory Healthcare concluded that AbouYabis's conduct was "rooted in bias and hate," and Emory reasonably determined that her continued employment was inconsistent with the university's obligation to provide a safe, inclusive, and nondiscriminatory environment for patients, employees, and the broader community. Am. Compl. ¶¶ 148–50. After conducting an internal investigation, Emory lawfully terminated AbouYabis on November 8, 2023. *Id.* ¶¶ 148–49.

AbouYabis now attempts to use Dr. Weiden as a scapegoat for her termination, alleging that he publicly denounced her as a "Hamas supporter" on social media and "led a coordinated campaign" to have her fired from Emory. *Id.* ¶¶ 19, 155, 157, 222, 262, 270. Yet AbouYabis fails to provide any factual detail about when, where, or how Dr. Weiden allegedly made such a statement regarding her support for Hamas or led any such campaign. In fact, there is no record of Dr. Weiden ever making any statement with respect to AbouYabis's support for Hamas.

---

[1] Emory Healthcare (@emoryhealthcare), Instagram, October 17, 2023, https://www.instagram.com/p/CygmGUkNyw5/ (last visited July 17, 2025).

AbouYabis similarly fails to provide anything more than conclusory statements with respect to each of the other claims she brings against Dr. Weiden.

## LEGAL STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff. *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). However, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. A complaint based on allegations that are conclusory, speculative, and unsupported by any factual content must be dismissed. *Id.*

## ARGUMENT

### A. Count X Fails To State A Claim For Hostile Work Environment Under Title VII or the ADA

AbouYabis's hostile work environment claims against Dr. Weiden are time-barred, improperly brought against an individual who was never her employer, and devoid of any allegations that even remotely support a hostile work environment theory under either Title VII or the ADA.

First, AbouYabis's claims under both Title VII and the ADA are time-barred. As AbouYabis concedes in her Amended Complaint , the EEOC issued her a Right-

to-Sue letter on January 31, 2025. *See* Am. Compl. ¶ 12. Yet she did not initiate this action until May 19, 2025—91 days later—missing the 90-day deadline imposed by both Title VII, 42 U.S.C. § 2000e-5(f)(1), and the ADA, 42 U.S.C. § 12117(a). AbouYabis's failure to meet this clear jurisdictional requirement alone warrants dismissal of Count X in its entirety. *See Complaint* (ECF Doc. No. 1).

Second, even if AbouYabis had timely filed her claims—and even if they had merit, which they do not, they would still fail as a matter of law because neither Title VII nor the ADA provides a cause of action against individual co-workers for hostile work environment claims. The Eleventh Circuit has held unequivocally that "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). The ADA is governed by the same standard. 42 U.S.C. § 12117(a) incorporates the enforcement provisions of Title VII, and it is therefore well settled in the Eleventh Circuit that there is no individual liability under the ADA. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Bosarge v. Mobile Area Water & Sewer Service*, 2022 WL 203020, at *6 (11th Cir. 2022).

Third, even if the claims were timely and Dr. Weiden were a proper defendant (he is not), the allegations still fall far short of what is required to state a hostile work environment claim. The elements of a prima facie hostile work environment claim

are well established: (1) Plaintiff must be a member of a protected class; (2) must have been subject to unwelcome harassment; (3) the harassment must have been based on a protected characteristic; (4) the harassment must have been sufficiently severe or pervasive; and (5) the employer must be liable for it. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d at 1275. AbouYabis has failed to plausibly allege even one of these elements against Dr. Weiden. She has not, and cannot, allege that Dr. Weiden engaged in conduct in the workplace that was so severe or pervasive as to alter the terms and conditions of her employment. Remarkably, she has not identified a single act by Dr. Weiden *in the workplace*—much less one that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Id.*, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The only conduct AbouYabis attributes to Dr. Weiden in support of her hostile work environment claim is that he purportedly "publicly celebrated the ethnic cleansing of Palestinians [on social media] and led a public and Emory-wide campaign to have [her] fired" Am. Compl. ¶250. But these claims are built entirely on her own skewed interpretations of a single social media exchange. Specifically, AbouYabis points to a post by another user tagging @EmoryUniversity and asking whether any Jewish professors work there, and with reference to AbouYabis, added that "they should know about their antisemitic colleague." Dr. Weiden then replied,

"We will start working on the campaign to get her fired." Am. Compl. ¶¶ 156-157. From this, AbouYabis leaps to the baseless conclusion that Dr. Weiden conspired with "anti-Palestinian and anti-Muslim actors" to target her for termination because of her political views. Her theory, according to her own allegations, admittedly hinges on a single word—"we"—and is pure speculation, wholly unsupported by any factual allegations regarding actual coordination, intent, or workplace conduct. *Id.*

Finally, AbouYabis's ADA claim against Dr. Weiden fails for the additional reason that she does not allege any conduct by him related to her disability. Pursuant to 42 U.S.C. § 12112(a), individuals with a qualified disability cannot be discriminated against on the basis of such disability. AbouYabis claims she had PTSD and depression and was on a leave of absence at the time of her termination, but she does not allege that Dr. Weiden was even aware of her disability or that he took any action on the basis of it. Instead, she herself attributes her termination to her political speech and her Palestinian and Muslim identity—not her disability. Am. Compl. ¶1. Thus, even if the ADA permitted individual liability (which it does not), Count X would still fail to state a claim against Dr. Weiden.

Because AbouYabis's claims under Title VII and the ADA were untimely, fail to allege facts supporting a hostile work environment or disability-based

discrimination, and are improperly brought against an individual who was never her employer, Count X must be dismissed in its entirety as to Dr. Weiden.

### B. COUNT XI FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1985(3)

AbouYabis's conspiracy claim against Dr. Weiden is not only legally deficient—it collapses under even minimal scrutiny. To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation. *Childree v. UAP/GA AG Chem, Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996); *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997). But the Amended Complaint does not allege—because it cannot allege—that Dr. Weiden ever communicated with, let alone agreed with, any other defendant to violate AbouYabis's civil rights. That alone is fatal to her conspiracy claim.

It is black-letter law that "[i]n order to establish a § 1985(3) conspiracy claim, [a plaintiff] must show an agreement between two or more persons to deprive [her] of [her] civil rights." *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767 (11th Cir. 2000). The Eleventh Circuit has repeatedly held that the "linchpin for conspiracy is agreement." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992); *Mickens v. Tenth Jud. Cir.*, 181 F. App'x 865, 876 (11th Cir. 2006) ("The core of a conspiracy claim is an agreement between the parties; thus,

where the plaintiff fails to allege an agreement, the pleading is deficient and subject to dismissal."); *Wilbourne v. Forsyth County School Dist.,* 306 F. App'x 473, 478 (11th Cir. 2009).

Yet the Amended Complaint is entirely silent as to any agreement involving Dr. Weiden. It fails to allege a single fact showing that Dr. Weiden ever spoke with any other defendant about AbouYabis—much less that he entered into a coordinated scheme with the intent to deprive her of her civil rights. AbouYabis's vague and unsubstantiated reference to a "coordinated campaign" is a legally bankrupt attempt to satisfy the conspiracy standard. Courts are not required to credit "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). That is all AbouYabis offers here"— speculation dressed up as conspiracy.

As discussed *supra,* the only conduct AbouYabis attributes to Dr. Weiden in support of her conspiracy claim is a single social media post in which he allegedly responded to another user's report of her antisemitic conduct by stating, "We will start working on the campaign to get her fired." Am. Compl. ¶ 157. That one comment, standing alone, is woefully insufficient to establish the existence of a conspiracy. AbouYabis *admittedly* hinges her theory on the single word "we"—as if that were enough to imply a coordinated agreement among multiple actors. *Id*. It is not. AbouYabis pleads no facts indicating that a campaign actually took place, that

it involved any co-defendant, or that it was undertaken with the requisite intent to deprive her of civil rights. Indeed, AbouYabis has no idea what, if anything, Dr. Weiden did after that post. Her assumption that a conspiracy must have ensued is both speculative and patently unfounded.

Even if Dr. Weiden had in fact expressed a desire to see AbouYabis terminated, he would have been entirely within his rights to do so given her own egregious public conduct, which included praising Hamas—a designated terrorist organization—and glorifying its violent attack on innocent civilians. Advocacy to remove a colleague who publicly supports terrorism is not unlawful, let alone actionable as a conspiracy.

Accordingly, Count XI is nothing more than an improper attempt to manufacture a civil rights conspiracy constructed entirely from pure conjecture. It is devoid of factual support, legally unsustainable, and must be dismissed with prejudice.

### III. COUNT XII FAILS TO STATE A CLAIM FOR DEFAMATION

AbouYabis's defamation claim against Dr. Weiden fails as a matter of law on multiple, independently dispositive grounds. First, it is untimely under Georgia's one-year statute of limitations for defamation claims. *See* O.C.G.A. § 9-3-33. According to her own pleading, AbouYabis was terminated on November 8, 2023. Am. Compl. ¶ 1. She did not initiate this action until May 19, 2025—more than

eighteen months later. See Compl. (ECF No. 1). To the extent AbouYabis alleges that any purportedly defamatory statement by Dr. Weiden contributed to the termination of her employment, such a statement necessarily would have occurred prior to that date and is therefore time-barred.

Even assuming arguendo that the claim were timely, it fails on the merits. To state a claim for defamation under Georgia law, a plaintiff must allege: (1) a false and defamatory statement; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) either special harm or defamation per se. *See Restatement (Second) of Torts* § 558 (Am. L. Inst. 1977); *Smith v. DiFrancesco*, 341 Ga. App. 786, 787 (Ga. Ct. App. 2017). In addition, no defamation claim can lie absent publication of the alleged statement. *Grace v. Lowery*, 860 S.E.2d 159, 162 (Ga. Ct. App. 2021).

AbouYabis asserts—outside the specific defamation count—that Dr. Weiden referred to her as a "Hamas supporter." Yet she fails to allege when the statement was made, where it was published, or to whom it was communicated. That omission alone is fatal. A defamation plaintiff must plead not only the content of the statement, but also its publication. *Id*. In any event, AbouYabis will be unable to establish publication—because Dr. Weiden never made such a statement.

Even if he had, the alleged remark would be constitutionally protected opinion under the First Amendment. Whether someone "supports" a particular group is

inherently subjective; it reflects an individual's interpretation of another's public conduct and speech. Such characterizations are not verifiable statements of fact. Only AbouYabis knows her true beliefs. *Gettner v. Fitzgerald*, 297 Ga. App. 258, 261 (2009) ("a defamation action will lie only for a statement of fact," and "a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false").

Moreover, opinion is protected from defamation liability where it is based on disclosed facts that are themselves true. *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 18–20 (1990). Here, the statement that AbouYabis "supports Hamas" would be a reasonable inference drawn from her own social media commentary. In the days following the October 7 attacks, AbouYabis posted: "They got walls, we got gliders. Glory to all resistance fighters … We will pay for Israel slaughter." Am. Compl. ¶ 132. She further declared that she was "praying for the freedom fighters" who carried out those attacks. *Id*. These posts—made in direct reference to a coordinated terrorist assault in which Hamas fighters murdered, raped, and kidnapped civilians— constitute overt expressions of support for a designated terrorist organization.

AbouYabis attempts to argue that her years of interfaith work and prior condemnations of violence show that she does not support Hamas. Am. Compl. ¶ 133. But the issue is not her prior activities or stated values—it is whether her social

media posts in the wake of the October 7 attacks reasonably gave rise to the view that she was supporting Hamas. They did.

AbouYabis further alleges that Dr. Weiden "led and encouraged the internal campaign to 'get her fired,'" and that this somehow constitutes defamatory conduct. This allegation fails for at least two reasons. First, even if Dr. Weiden had been involved in such a campaign (he was not), urging an employer to take disciplinary action is not a defamatory statement—it is an expression of opinion or advocacy, not an assertion of verifiable fact. Second, the phrase "get her fired" does not, on its face, communicate anything false about AbouYabis's character, conduct, or reputation. Rather, it reflects the speaker's viewpoint that her continued employment was untenable. Such advocacy, whether internal or public, cannot form the basis for a defamation claim. There is a clear distinction between expressing disapproval of someone and making false factual assertions about them. AbouYabis's allegation falls into the former category.

Given that AbouYabis's defamation claim is untimely, fails to allege a false or defamatory statement published by Dr. Weiden, and targets a statement that, even if made, would be constitutionally protected opinion or substantially true, Count XII must be dismissed with prejudice.

14

## IV. COUNT XIV FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

AbouYabis's claim for tortious interference with contract against Dr. Weiden fails as a matter of law. To state a valid claim, a plaintiff must allege: (1) the existence of a valid contract; (2) the defendant's knowledge of that contract; (3) intentional and malicious interference without privilege or legal justification; and (4) resulting damage. An essential element of this tort is that the alleged tortfeasor used wrongful means to induce a third party not to enter into or to terminate a business relationship with the plaintiff. *Camp v. Eichelkraut*, 246 Ga. App. 275, 278–79 (Ga. Ct. App. 2000). The term "maliciously" is interpreted expansively to include any unauthorized interference or interference undertaken without legal justification or excuse. *Id.* While the Amended Complaint assumes the existence of a valid employment contract between AbouYabis and Emory, it fails to plead any facts establishing the remaining required elements of a tortious interference claim.

Nowhere does the Amended Complaint allege that Dr. Weiden had actual knowledge of the terms of AbouYabis's employment contract with Emory, let alone that he intentionally and maliciously interfered with it. There are no allegations that he communicated with Emory about AbouYabis's contract, exerted any influence over Emory's decision-making process, or otherwise took any direct action aimed at interfering with AbouYabis's contractual relationship. The only reference to any

alleged conduct is a single social media post in which Dr. Weiden stated, "We will start working on the campaign to get her fired." Am. Compl. ¶ 157. The Amended Complaint does not allege that the statement was made seriously, resulted in any coordinated effort, or was followed by any action on Dr. Weiden's part at all.

Equally deficient is the Amended Complaint's failure to allege that Emory was even aware of Dr. Weiden's comment—let alone that it was influenced by it in making the decision to terminate AbouYabis. Without any allegation of causation, the claim fails as a matter of law. In fact the record is clear: it was AbouYabis's own public antisemitic statements—not any action by Dr. Weiden—that led to her termination. *See, e.g.*, Am. Compl. ¶¶ 76–95, 132, 148–149.

To the extent AbouYabis's claim is premised on the alleged statement that she is a "Hamas supporter," that theory is equally unavailing. Even assuming such a statement was made, the Amended Complaint fails to allege that was communicated to Emory or that it influenced AbouYabis's termination in any way. Moreover, as discussed *supra*, any such statement, based on AbouYabis's own public praise of Hamas, constitutes protected opinion under the first amendment and cannot form the basis of a tortious interference claim.

At its core, AbouYabis's tortious interference claim represents an improper attempt to penalize Dr. Weiden for exercising his right to speak out against her antisemitic rhetoric. The Amended Complaint contains no allegations that Dr.

Weiden had knowledge of the specific terms of AbouYabis's contractual relationship with Emory, engaged in any wrongful or unjustified conduct, or played any causal role in her termination. Absent such well-pleaded facts, Count XIV fails as a matter of law and must be dismissed with prejudice.

## V. COUNT XV FAILS TO STATE A CLAIM FOR FALSE LIGHT INVASION OF PRIVACY

AbouYabis's false light claim against Dr. Weiden is as legally deficient as her defamation claim and should be dismissed for the same reasons—most notably, the absence of any actionable statement or information. A claim for false light invasion of privacy requires a showing that: (1) the defendant publicly disclosed information placing the plaintiff in a false light and (2) the false light would be highly offensive to a reasonable person. *Association Services, Inc. v. Smith,* 249 Ga. App. 629, 633 (2001). The Court should not award AbouYabis's obvious attempt to repackage her failed defamation claim under a different tort theory.

The only statement or information that AbouYabis attributes to Dr. Weiden in the Amended Complaint is that he purportedly described her as a "Hamas supporter"—a statement that is referenced only indirectly in the general allegations and not within the actual false light count. Am. Compl. ¶19. But as explained in detail in Section III *supra*, that alleged remark is not actionable. It is neither demonstrably false nor misleading, particularly in light of AbouYabis's own social

media posts expressly glorifying the October 7 terrorist attacks and praising the "resistance fighters" who carried them out. Am. Compl. ¶ 132. The conclusion that AbouYabi supports Hamas is a fair interpretation of her own words. A statement that is either substantially true or constitutes constitutionally protected opinion cannot support a claim for false light invasion of privacy. *Monge v. Madison County. Record, Inc.*, 802 F. Supp. 2d 1327, 1336–37 (N.D. Ga. 2011) (citing *S & W Seafoods Co. v. Jacor Broad. of Atlanta*, 194 Ga. App. 233, 237, 390 S.E.2d 228 (Ga. Ct. App. 1989)).

Nor does the Amended Complaint allege that any false portrayal of AbouYabis was publicized by Dr. Weiden. Her claim relies entirely on vague and conclusory assertions about how she was perceived by the public, without connecting that perception to any actual conduct by Dr. Weiden. Even if he did share his opinion that she is a "Hamas supporter," the Amended Complaint is devoid of any facts suggesting that the statement was disseminated any more broadly than her own statements glorifying Hamas or that it was made with reckless disregard for the truth. Indeed, the Georgia Court of Appeals has made clear that the interest being protected in a false light case is "that of reputation." *Association Services, Inc. v. Smith*, 249 Ga. App. 629, 633, (2001) (quoting *Cabaniss v. Hipsley*, 114 Ga.App. 367, 370).  It defies logic to suggest that Dr. Weiden's alleged post regarding AbouYabis's support for Hamas inflicted greater reputational harm than

AbouYabis's own prolific social media posts, in which she openly praised the Hamas "resistance" and prayed for the "freedom" fighters that perpetrated the October 7 attacks. Am. Compl. ¶ 132

For all these reasons, and those stated more fully in Section III above, Count XV must be dismissed with prejudice.

## VI. SANCTIONS ARE WARRANTED UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY

AbouYabis's claims against Dr. Weiden are not merely legally deficient, they are part of a broader effort to retaliate against a Jewish colleague for speaking out against her public endorsement of Hamas. As pled, this case is steeped in antisemitic rhetoric and political invective—not facts, law, or good-faith pleading. Sanctions are warranted under 28 U.S.C. § 1927 and the Court's inherent authority to address litigation brought in bad faith.

As the Eleventh Circuit held in *Amlong & Amlong, P.A. v. Denny*, 500 F.3d 1230 (11th Cir. 2007), sanctions are proper where a party's conduct "multiplies the proceedings unreasonably and vexatiously" and where an attorney "knowingly or recklessly pursues a frivolous claim that results in unnecessary proceedings." *Id.* at 1242. *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). The Court in *Almong* emphasized that "[s]omething more than a lack of merit is required. The statute was designed to sanction attorneys who willfully abuse the judicial process

by conduct tantamount to bad faith." *Id*. (quoting *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)). That standard is met here.

AbouYabis's voluminous, ideologically charged complaint is laced with irrelevant diatribes against "Zionists," "the Zionist occupation," and the State of Israel. *See e.g.*, Am. Compl. ¶ 46. Indeed, AbouYabis's counsel gratuitously invokes the term "Zionist" over 90 times in the Amended Complaint, routinely uses inflammatory and inaccurate geopolitical references (such as referring to cities in Israel as being in "occupied Palestine"), and replaces legal argument with polemics on genocide and apartheid. This anti-Zionist framing is not only irrelevant to AbouYabis's legal claims, it reveals the underlying animus behind this lawsuit. Dr. Weiden is not being sued for engaging in unlawful conduct—he is being sued because, as a Jewish Zionist, he publicly criticized AbouYabis's praise of Hamas.

Dr. Weiden should never have been named as a defendant, let alone accused of a hostile work environment, civil rights conspiracy, defamation, false light invasion of privacy or tortious interference, based on nothing more than a single social media post and a difference in political worldview. The inflammatory and baseless nature of the claims, particularly given their foundation in religious, ethnic, and racial hostility, makes this litigation abusive and sanctionable.

The Court should not countenance this misuse of judicial resources. The obvious political motivation underlying this lawsuit and the lack of legal merit

justifies sanctions. This Court should exercise its discretion to award Dr. Weiden his reasonable attorney's fees and costs incurred in defending against this baseless suit.

## **CONCLUSION**

For the foregoing reasons, Dr. Weiden respectfully requests that the Court dismiss with prejudice all claims asserted against him in Counts X, XI, XII, XIV, and XV of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dr. Weiden further requests that the Court award him his attorneys' fees and costs under 28 U.S.C. § 1927 and its inherent authority to sanction bad-faith litigation.

[THIS SPACE IS INTENTIONALLY LEFT BLANK]

Dated: July 18, 2025

Respectfully submitted,

**National Jewish Advocacy Center, Inc.**

By: */s/ Lauren Israelovitch*
Lauren Israelovitch*
3 Times Square
New York, NY 10036
(914) 222-3828
lauren@njaclaw.org
*Admitted pro hac vice


**Weissmann Zucker Euster + Katz P.C.**

By: */s/ David F. Katz*
DAVID F. KATZ
The Fountains at Piedmont Center
Building 11, Suite 950
3495 Piedmont Road
Atlanta, Georgia 30305
T. 404-390-2941
dkatz@wzlegal.com
GA Bar No. 408738


*Attorneys for Defendant Jason Weiden*