**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **ABEER ABOUYABIS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**EMORY UNIVERSITY, et al.,**<br><br>**Defendants.** | **CIVIL ACTION NO.**<br>**1:25-CV-2438-ELR-CCB** |

# ORDER

Plaintiff Abeer AbouYabis brought this action arising out of her termination from Emory University in November 2023. (Doc. 31). The Court has already addressed Plaintiff's Second Amended Complaint (SAC). As relevant here, in my July 30, 2026 Report and Recommendation, I recommended dismissal of all claims against Defendants Adam Milstein, Gila Milstein, and the Adam and Gila Milstein Family Foundation (collectively, the Milsteins); the Ann and Robert Fromer Charitable Foundation Inc. (Fromer); the Merona Leadership Foundation (Merona); the Natan and Lidia Peisach Family Foundation (Peisach); and the Koum Family Foundation (Koum) (collectively, the Donor Defendants) for lack of personal jurisdiction. (Doc. 118 at 14–24). I separately concluded that Plaintiff's

allegations under 42 U.S.C. § 1985(3) failed to state a claim. *Id.* at 42–47. The District Judge adopted those recommendations on September 17, 2026. (Doc. 131 at 16-17).

Before the Court now are motions for sanctions filed by Defendant Jason D. Weiden, (Doc. 40-1 at 19-22), and by four of the "Donor Defendants": the Milsteins, Fromer, Merona, and Koum. (Docs. 47, 92, 98, 100). Those requests invoke Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority as bases for sanctions against Plaintiff and her counsel, Abdel-Rahman Hamed.[1] Plaintiff opposes the motions. (Docs. 49 at 52–53; 58; 97; 106; 114). For the reasons below, I **GRANT IN PART** the Rule 11 motions for sanctions as to the Milsteins, Fromer, and Koum (Docs. 47, 92, 100) and **DENY** the motions for sanctions under § 1927 and the Court's inherent authority as to Weiden, (Doc. 40-1 at 19-22), and Merona, (Doc. 98).

## I. Background Facts

Because I have already recounted the factual and procedural background of this case at length in the R&R (and Judge Ross has done the same in her subsequent

[1] Plaintiff is also represented by local counsel, Ravindra Rayasam. There is no mention of local counsel in the briefing, and as such, I do not include him in the sanctions analysis. But given that I impose sanctions against Mr. Hamed, I remind Mr. Rayasam of the obligations of local counsel (which he acknowledged with his signature) that he "must authorize and sign all pleadings and other papers filed in the case by the Applicant and that [he is] subject to the requirements of Fed. R. Civ. P. 11." (Doc. 8 at 3).

order), I recount here only those facts necessary to resolve the pending motions for sanctions.

In October 2023, Plaintiff made a series of social media posts expressing her views about Israel and Palestine. (Doc. 31 at ¶¶ 84–108). Defendant StopAntisemitism.org publicized screenshots of some of those posts along with identifying information about Plaintiff and her employment at Emory. *Id.* at ¶ 159. Complaints seeking Plaintiff's termination soon poured into Emory, and, several weeks later, Emory terminated her employment. *Id.* at ¶¶ 168–78. In this action, Plaintiff alleged, among many other things, that StopAntisemitism.org, Canary Mission, Emory officials, Defendant Jason Weiden, and others participated in a conspiracy to violate her civil rights. *Id.* at ¶¶ 375–407. She also named the Donor Defendants, which consist of several individuals and foundations that, according to the SAC, provided financial support—either directly or through intermediary organizations—to StopAntisemitism.org, Canary Mission, or both. *Id.* at ¶¶ 29–37. Four sets of those Donor Defendants—the Milsteins, Fromer, Koum, and Merona—have brought the motions for sanctions at issue here.

Plaintiff's allegations against Weiden centered on his response to the online controversy surrounding her social media posts. Weiden, an Emory radiologist,

allegedly responded to an X user who asked whether Jewish doctors and professors at Emory knew about their "antisemitic colleague" by stating, "We will start working on the campaign to get her fired." *Id.* at ¶¶ 27, 185–86. Plaintiff alleged that Weiden then participated in, and indeed "led," a coordinated campaign to cause Emory to terminate her employment. *Id.* at ¶¶ 27, 444–46. She relied on that alleged conduct in support of her claims for conspiracy under 42 U.S.C. § 1985(3) and tortious interference with her employment relationship. *Id.* at ¶¶ 391, 444–46. Plaintiff also alleged that Weiden publicly endorsed characterizations of her as a "Hamas supporter" and an "antisemite," which she contends falsely portrayed her as supportive of terrorism and as antisemitic. *Id.* at ¶¶ 27, 472. On that basis, she also asserted a state-law claim against Weiden for false light invasion of privacy. *Id.* at ¶¶ 467–92.

In my R&R, I recommended that the claims against the Donor Defendants be dismissed for lack of personal jurisdiction. (Doc. 118 at 14–24). Separately, I concluded that the § 1985 conspiracy claim, as well at the state-law claims against Weiden, should be dismissed for failure to state a claim (and as to the false-light claim, because it was untimely). *Id.* at 42–47. The District Judge adopted both recommendations. (Doc. 131 at 16-17).

## II. Legal Standard

Under Rule 11 of the Federal Rules of Civil Procedure, "sanctions are proper (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (internal quotation marks omitted). "The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (internal quotation marks omitted). "The Court must apply a two-step inquiry when determining whether Rule 11 sanctions are appropriate. The Court considers: (1) whether the party's claim is objectively frivolous, in view of the law or facts and (2) whether the person signing the document should have been aware that it was frivolous." *Ndb Advisory, LLC v. Ilumis, Inc.*, No. 1:25-cv-496-MLB, 2026 WL 195015, at *3 (N.D. Ga. Jan. 23, 2026) (internal quotation marks omitted). "The objective standard for assessing conduct under Rule 11 is reasonableness under the

circumstances and what it was reasonable to believe at the time the pleading was submitted." *Id.* (internal quotation marks omitted). That being said, the Rule 11 standard is not static as of the time of filing—the fact that "the contentions contained in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning [a lawyer] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable." *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996).

Meanwhile, under 28 U.S.C. § 1927, an attorney or other person admitted to conduct cases "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "For sanctions under section 1927 to be appropriate, something more than a lack of merit is required." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). Indeed, the "statute was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith." *Id.* (internal quotation marks omitted). And a "determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Id.* "Unlike Rule 11,

which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (internal quotation marks omitted) (citing a Third Circuit opinion for the proposition that sanctions under section 1927 are intended to deter an attorney from intentionally and unnecessarily delaying judicial proceedings).

And finally, courts "have the inherent authority to control the proceedings before them, which includes the authority to impose reasonable and appropriate sanctions." *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) (internal quotation marks omitted). "In the context of inherent powers, the party moving for sanctions must show *subjective* bad faith." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). "This standard can be met either (1) with direct evidence of the attorney's subjective bad faith or (2) with evidence of conduct so egregious that it could only be committed in bad faith." *Id.* (internal quotation marks omitted).

## III. Weiden's Motion for Sanctions

First, Weiden moves for sanctions specifically under § 1927 and the Court's inherent authority, requesting reasonable attorney's fees and costs he incurred

defending this action. (Doc. 40-1 at 19–22). He argues that sanctions are warranted because Plaintiff and her counsel have pursued claims against him in bad faith and thus have unreasonably and vexatiously multiplied the proceedings. *Id.* at 19–20. He notes that the SAC is replete with pejorative terms and suggests that he was sued only because he is a Jewish Zionist who criticized Plaintiff's statements. *Id.* at 21.

Of all the motions for sanctions, Weiden's stands on the weakest ground. Plaintiff's theory of conspiracy as to Weiden had a concrete, defendant-specific factual premise: she was suspended and then terminated shortly after Weiden's post promising to "start working on the campaign to get her fired." (Doc. 31 at ¶ 186). In other words, Weiden made a statement expressly referring to a "campaign" to bring about the very employment action that followed. The conspiracy allegation ultimately failed, for the reasons discussed in the R&R: the SAC did not identify who Weiden meant by "we," and most importantly, it did not allege communications between Weiden and Emory decisionmakers. (Doc. 118 at 44–47). But a pleading can fall short of stating an adequate claim, as this one did, without being sanctionable.

The same applies to Plaintiff's state-law theories. Her tortious interference claim failed because the SAC did not adequately allege an independent wrongful act or facts showing that Weiden's conduct caused Emory to terminate her. (Doc. 118 at 51–52). But Plaintiff did allege that Weiden publicly criticized her, endorsed characterizations of her speech as antisemitic or supportive of Hamas, and expressly advocated a campaign to have her fired. (Doc. 31 at ¶¶ 27, 444–46). And although the false-light claim was both untimely and inadequately pleaded, Plaintiff at least identified conduct by Weiden that she believed falsely portrayed her as a Hamas supporter and an antisemite. *Id.* at ¶ 472. The Court cannot say that asserting these claims—against a person who allegedly announced that he would participate in a campaign to have Plaintiff fired—was so devoid of factual foundation, or so objectively unreasonable, as to warrant sanctions.

Weiden argues that the SAC is animated by antisemitic hostility and that Plaintiff sued him because he is Jewish and publicly criticized her posts. (Doc. 40-1 at 19–21). The complaint undoubtedly includes inappropriate rhetoric, as I discuss below. But given that Plaintiff made colorable arguments as to Weiden, the inclusion of inflammatory framing does not amount to clear evidence of bad faith sufficient to justify any sanctions as to Weiden.

As such, Weiden's motion for sanctions, (Doc. 40-1 at 19–22), is **DENIED**.

## IV. The Donor Defendants' Motions for Sanctions

Four sets of Donor Defendants also move for sanctions. (Docs. 47, 92, 98, 100). In broad strokes, they argue that Plaintiff and Mr. Hamed asserted claims lacking any factual or legal basis, improperly named individuals and nonprofit entities based on their Jewish identity or support for Israel, and used the SAC as a vehicle for political rhetoric rather than legal claims. *See generally id.* Plaintiff responds that the motions improperly collapse Rule 12 merits arguments into sanctions requests, that her claims were at least colorable attempts to address a developing area of law involving online doxing and employment consequences, and that Defendants' accusations of antisemitism are themselves inflammatory and unsupported. (*See generally* Docs. 58, 97, 106, 114).

Milstein and Fromer request attorney's fees as a sanction under Rule 11. (Doc. 47-1 at 25; Doc. 92-1 at 25). Koum requests attorney's fees and costs under Rule 11 and the Court's inherent authority. (Doc. 100 at 9). Merona requests fees and costs under § 1927 and the Court's inherent authority. (Doc. 98 at 24).

### a. The § 1985(3) Claim Against the Donor Defendants was Frivolous

Plaintiff asserted only one claim against the Donor Defendants: the § 1985(3) conspiracy claim in Count VIII. (Doc. 31 at ¶¶ 375–407). In the R&R, I concluded

that the Court lacks personal jurisdiction over the Donor Defendants and, separately, that Count VIII fails to state a claim against any Defendant. (Doc. 118 at 14–24, 42–47). Neither conclusion, standing alone, means that sanctions are warranted. But unlike with the claims against Weiden, the conspiracy claim against the Donor Defendants failed at every step, for reasons that should have been obvious before it was filed.

At the outset, I again note (as I did at length in the R&R) the similar case Plaintiff's counsel filed asserting conspiracy theories against some of the same Donor Defendants. Before any of the motions to dismiss were resolved in this case, the United States District Court for the District of Columbia issued a decision in *Johnson v. Georgetown University*, 827 F. Supp. 3d 133 (D.D.C. 2026). As discussed in the R&R, *Johnson* was a case brought by the same counsel, arose from materially similar allegations concerning employment consequences following pro-Palestinian speech, asserted similar theories against a university, online organizations, and their donors, and involved analogous Rule 11 motions. (Doc. 118 at 2–3 n.1). District Judge Christopher R. Cooper rejected the donor-based jurisdictional theory and the § 1985(3) conspiracy theory. *Johnson*, 827 F. Supp. 3d at 158, 172. And more importantly for present purposes, he concluded that the

donor claims were sufficiently deficient to violate Rule 11. *Id.* at 192. He characterized the § 1985(3) and related donor theories as "untenable," "legally and factually frivolous," and "beyond colorable." *Id.* at 190, 192. Ultimately, though, he declined to impose a monetary sanction, instead admonishing Mr. Hamed to exercise greater care in formulating future complaints. *Id.* at 192–93.

I find Judge Cooper's opinion, which addresses nearly identical arguments to those I face here, eminently persuasive in nearly every respect. If I were going first, I would have resolved each issue and reached the conclusions he did for the reasons set forth in his thorough and well-reasoned opinion. The major difference here is that Judge Cooper's finding—that the similar complaint in that case violates Rule 11—was issued over three months before the R&R issued here. Meaning that Plaintiff's counsel had the benefit of that opinion for some time before the SAC was dismissed as to the Donor Defendants here. For the reasons set forth below I too agree that Plaintiff's counsel violated Rule 11. The question really becomes what the sanction should be, particularly in light of the warning afforded Plaintiff's counsel that he had crossed the line in a similar case.

Start with the law. As explained in the R&R, none of the rights Plaintiff invoked can support a § 1985(3) claim against private actors. Title VII rights

cannot. *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979). Section 1981 rights cannot. *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010). First and Fourteenth Amendment rights cannot either, absent state action (and every alleged conspirator here is a private actor). *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 830 (1983); *Terry Props., Inc. v. Standard Oil Co. (Ind.)*, 799 F.2d 1523, 1533-34 (11th Cir. 1986). Nor did Plaintiff offer any reasoned argument for extending the law to reach donors; Rule 11 leaves ample room for such arguments, but they have to be made, and they have to be reasonable.

The facts fare no better. The "linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). As I noted in the R&R, the SAC "identifies no communications, agreements, meetings, instructions, directives, or other facts plausibly showing that any Donor Defendant entered into an agreement with Emory." (Doc. 118 at 20). What the SAC offers in their place is telling. As to Koum, its entire role in this case is apparently a single $50,000 grant to StopAntisemitism.org, made at some unspecified point in 2023 and listed on its tax return as "general charity." (Doc. 31 at ¶ 37). From that, the SAC concludes

that Koum "enabled [Defendant Liora] Reznichenko's October 16, 2023 doxing campaign."[2] *Id.* Fromer's donation to Canary Mission, meanwhile, is neither dated nor even quantified. *Id.* at ¶¶ 31, 389. The SAC offers as further proof of Fromer's involvement that it also supports Friends of the IDF and Birthright Israel, which "demonstrate[s] its alignment" with the "Zionist occupation, apartheid, and genocide in Palestine." *Id.* at ¶ 31. In other words, the organization allegedly gave money to causes that Plaintiff (or her counsel) dislikes. That is not evidence of a conspiracy to deprive Plaintiff of her civil rights, and it does not belong in a complaint.

Merona arguably sits closest to the events, because the SAC alleges that it directly compensated Reznichenko, including $142,722 in 2023. *Id.* at ¶ 36. But that does not constitute an agreement with *Emory* to do anything, and the complaint alleges no fact suggesting that Merona knew of the post before it went up, much less that it communicated with Emory about it. As for the Milsteins, the complaint leans on Mr. Milstein's recorded statements about the need to "investigate" and "expose" critics of Israel. *Id.* at ¶¶ 29, 119. Whatever else might be said about those

[2] Reznichenko is alleged to be the executive director and founder of StopAntiSemitism.org. (Doc. 31 at ¶ 13).

statements, they concern a broad class of people, not Plaintiff or Emory. The complaint also finds room to describe Adam Milstein as "a convicted tax felon," *id.* at ¶ 112, a detail that has nothing to do with any conceivable element of any claim.

Other allegations lack any support in the pleading itself. The SAC announces at the outset, for instance, that the Donor Defendants "pressured and coordinated with Emory University" and "published and amplified defamatory content." *Id.* at ¶ 10. But no fact anywhere in its 213 pages supports either assertion. In briefing, Mr. Hamed represented that the Milsteins "engaged in individualized targeting of [Plaintiff], explicitly identified her Georgia employer, coordinated with Georgia-based co-conspirators, monitored Georgia-specific results, and celebrated her termination." (Doc. 49 at 12). As I explained in the R&R, "absolutely nothing in the SAC suggests that the Milsteins, or any of the Donor Defendants, did anything of the sort." (Doc. 118 at 19).

To be sure, Rule 11(b)(3) permits factual allegations that are likely to obtain evidentiary support after discovery. But the Rule requires such allegations to be "specifically so identified." Fed. R. Civ. P. 11(b)(3). Here, the SAC did not identify the allegations of coordination, knowledge, and intent discussed above as

allegations expected to obtain support through discovery. It pleaded them affirmatively as facts. And Plaintiff was not entitled to use discovery to determine whether a factual basis existed for allegations she had already made. As the Court previously explained in denying jurisdictional discovery, Plaintiff's theory depended on assumptions concerning the donors' "knowledge, intent, and involvement" unsupported by factual allegations in the SAC. (Doc. 118 at 21 n.8).

These are significant problems. But the Court does not rest its sanctions determination solely on the deficiencies that existed when the SAC was filed; the subsequent history also matters. *See Turner*, 91 F.3d at 1422.

Judge Cooper's ruling did not retroactively render Plaintiff's SAC in this case sanctionable. Nor was Mr. Hamed obligated to agree with Judge Cooper, since *Johnson*, of course, is not binding authority in this District. But Rule 11 did require Mr. Hamed to reassess his position once a federal judge had rejected materially similar claims by the same counsel against materially similar donor defendants—and had found those claims sanctionable. And there were several ways Mr. Hamed could have responded. Most obviously, he could have sought leave to amend the pleading to remove or materially narrow the donor allegations. He could have withdrawn particular factual or legal contentions in subsequent

filings. At minimum, he could have stopped affirmatively advocating contentions that *Johnson* had squarely identified as unsupported.

Mr. Hamed did none of those things. To the contrary, after *Johnson*, he continued to defend the same basic proposition: that financial support for organizations alleged to have targeted Plaintiff supplied a sufficient basis to subject the donors themselves to this litigation. In opposing Fromer's sanctions motion, for example, Plaintiff acknowledged *Johnson*'s jurisdictional analysis but maintained the claim notwithstanding the absence of defendant-specific Georgia contacts. (Doc. 97 at 9).

As noted above, the Rule 11 obligations are ongoing. Even assuming Mr. Hamed could reasonably have believed when the SAC was filed that discovery might eventually establish some connection between these donors and the alleged campaign against Plaintiff, *Johnson* should have prompted a meaningful reassessment of that position. It was by then clear that an allegation of funding, coupled with generalized allegations concerning the recipient organization's activities, could not substitute for facts connecting a particular donor to a particular conspiracy. And Mr. Hamed had no new factual allegations filling that gap here.

Plaintiff emphasizes that *Johnson* declined to impose monetary sanctions and found no improper purpose. *See, e.g.*, Doc. 114 at 12–13. That is true. Judge Cooper also recognized the difficulty of pursuing anonymous organizations such as Canary Mission and the possibility that those difficulties contributed to Mr. Hamed's decision to name donor defendants. 827 F. Supp. 3d at 193. Plaintiff further notes that *Johnson* found the plaintiff's core employment claim nonfrivolous. (Doc. 114 at 16). Again, true, and these considerations counsel against the sweeping sanctions requested by Defendants. They do not, however, make continued advocacy of the donor claims objectively reasonable after *Johnson* expressly explained their defects and imposed Rule 11 sanctions based on materially similar conduct. Indeed, Judge Cooper noted the existence of this litigation and expressly left the question whether Mr. Hamed had engaged in similar misconduct here "for the sound judgment of [his] colleague in Atlanta." *Johnson*, 827 F. Supp. 3d at 193. Mr. Hamed drove through this cautionary warning without so much as a pause or hesitation, and the record now supports the determination that counsel has engaged in a pattern of misconduct.

As Judge Cooper put it, the difficulty of reaching elusive defendants like Canary Mission does "not license attorneys to bring specious claims based

essentially on mere affiliation." *Id.* That is what happened here. Accordingly, as to the Milsteins, Fromer, and Koum, the 1985(3) claim was frivolous under Rule 11(b)(2) and (b)(3), and a reasonable attorney would have known it—if not before *Johnson*, then certainly after it.

**b. Sanctions Under Section 1927 and the Court's Inherent Authority**

Merona does not seek sanctions under Rule 11. It instead invokes 28 U.S.C. § 1927 and the Court's inherent authority. (Doc. 98 at 19–24). The Court declines to impose sanctions under either source.[3]

As mentioned above, Section 1927 permits a court to require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to pay the excess costs, expenses, and attorney's fees reasonably incurred because of that conduct. 28 U.S.C. § 1927. Three requirements follow from the statute: counsel must engage in unreasonable and vexatious conduct; that conduct must multiply the proceedings; and any award must bear a financial nexus to the excess proceedings caused by the objectionable conduct. *Amlong & Amlong, P.A. v.*

[3] As an initial matter, Plaintiff argues that Merona's request is procedurally improper because it was included in Merona's motion to dismiss and did not comply with Rule 11's procedural requirements. (Doc. 106 at 24). That objection misses the mark. Merona does not seek Rule 11 sanctions. The Court declines to deny the request on this procedural ground.

*Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). The first requirement demands conduct sufficiently egregious to be tantamount to bad faith, although the inquiry is an objective one and may be satisfied only where an attorney knowingly or recklessly pursues a frivolous claim. *Id.* at 1242. And it requires "a causal connection between the objectionable conduct of counsel and multiplication of the proceedings." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

As explained above, the claim against Merona lacked a reasonable factual and legal basis. And *Johnson* gave Mr. Hamed an additional and particularly pointed reason to reconsider materially similar donor claims. But § 1927 requires more than the pursuit of an objectively unreasonable claim. It targets conduct that unreasonably and vexatiously multiplies proceedings beyond their ordinary course. *See Peterson*, 124 F.3d at 1396 (holding that conduct must have resulted in "proceedings that would not have been conducted otherwise"). The filing and length of the SAC therefore do not, without more, establish the necessary multiplication. And even after *Johnson*, the Court is not persuaded that Mr. Hamed's conduct crossed § 1927's more demanding line into conduct objectively tantamount to bad faith. The Court therefore declines to impose sanctions against Mr. Hamed under § 1927.

The Court also declines to impose sanctions under its inherent authority. Unlike Rule 11 and § 1927, the exercise of that authority ordinarily requires a finding of *subjective* bad faith; recklessness alone is insufficient. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–25 (11th Cir. 2017). Merona argues that Plaintiff's litigation conduct reflects an effort to advance an antisemitic conspiracy theory and impose unnecessary costs on Jewish nonprofit organizations, while Plaintiff denies any improper purpose and maintains that the allegations concerning Zionism are relevant to her theory of the case. (Doc. 98 at 20–24; Doc. 106 at 22–24). For the reasons discussed in the next section, the Court does not make the subjective finding that Plaintiff or Mr. Hamed pursued this litigation in bad faith or for the purpose of harassing Defendants based on their religion or political views. The fact that Mr. Hamed pursued claims the Court concludes were objectively unreasonable does not itself establish subjective bad faith. Accordingly, Merona's request for sanctions under § 1927 and the Court's inherent authority is **DENIED**, and Koum's request for sanctions under the Court's inherent authority is likewise **DENIED**.

**c. Improper Purpose and the SAC's Rhetoric**

The Milsteins, Fromer, and Koum also seek sanctions under Rule 11(b)(1), arguing that the SAC was filed for an improper purpose; that is, not to vindicate legal rights but ultimately to air political grievances against them and harass them due to their Jewish identity. (Doc. 47-1 at 22–25; Doc. 92-1 at 22–25; 100 at 29–31).

Rule 11(b)(1) turns on *why* a paper was filed. The Court does not know Mr. Hamed's motives, and I am not willing to infer them from this record. And certainly, to the extent movants invite the Court to consider Mr. Hamed's statements outside this litigation, I decline that invitation for the reasons Judge Cooper gave. *Johnson*, 827 F. Supp. 3d at 186–87. For a court to conduct a free-ranging inquiry into a lawyer's politics would be an exceedingly unwise practice, would spawn collateral disputes of its own, and would have little to do with whether a given filing abused the judicial process.

What Mr. Hamed chose to place in the Second Amended Complaint, however, is properly before the Court. And much of it is plainly inappropriate for a federal pleading. The SAC repeatedly substitutes polemic for factual pleading. It describes Canary Mission as a "criminal cyberstalking operation" and alleges that its funders finance a "criminal enterprise." (Doc. 31 at ¶ 28). It characterizes the

Central Fund of Israel as a "front organization," and alleges that Fromer's contributions demonstrate its alignment with organizations promoting "occupation, apartheid, and genocide." *Id.* at ¶ 31. It refers to Israel throughout not by its name but as the "Zionist Occupier" and characterizes Zionism as "a White supremacist and antisemitic ideology of hate and violence." *Id*. at ¶¶ 48, 79, 82, 108. The SAC further alleges, in sweeping terms, that "all Defendants" acted to silence persons who "affirm the human dignity of Palestinian children and oppose the Zionist occupation, apartheid, and genocide in Palestine." *Id*. at ¶ 16.

The problem is particularly evident in Plaintiff's conspiracy allegations. The SAC repeatedly describes a coordinated campaign involving "external Zionist entities," "financial enablers," and institutional actors and asserts a "meeting of the minds" to destroy Plaintiff professionally. *Id.* at ¶¶ 375–76. But when the rhetoric is stripped away, the pleading does not identify the communications, agreements, meetings, or directives necessary to support that accusation. As the Court explained in its R&R, "a sequence of events is not an agreement," and the complaint does not "hint at any events, conversations, or documents that might reveal an agreement." (Doc. 118 at 44, 46). Strongly held political convictions cannot fill that gap.

Although it should go without saying, the Court hastens to add that none of this turns on the viewpoint these passages express. Not at all. People of good faith disagree sharply about Israel, Gaza, and the many terrible events that have occurred in the region both before and after October 7, 2023. Many people, on every side, express those views in language at least as heated as this, and it is emphatically their right to do so. The problem is not which side of that debate the SAC takes, but that it asks the Court to take one at all. Nothing in Plaintiff's employment discrimination claims turns on what Zionism is or on whether "all Defendants" are indifferent to the dignity of Palestinian children. Pleading those contentions as "facts" only obscures the questions the Court must actually decide. Outside the docket, Mr. Hamed may advocate for any cause he likes, in whatever terms he thinks will persuade. But a federal complaint serves a different function. It is not an op-ed or a social media post; its purpose is to give fair notice of factual allegations and legal claims sufficient to invoke the jurisdiction of a federal court and, where appropriate, to obtain judicial relief. *See* Fed. R. Civ. P. 8(a).

As much as anything, Mr. Hamed should consider whom this approach ultimately serves. Plaintiff came to this Court with a concrete employment grievance, and she is entitled to have her claims evaluated on the merits to the

extent they can be. But here, those claims were buried in a 213-page pleading crowded with unsupported invective and name-calling about geopolitical matters no court could resolve. At a minimum, that made it harder for her claims to receive the careful attention they deserve. Every lawyer who appears here owes the Court and their opposing parties a baseline of professional restraint. That obligation does not depend on the subject matter, and it is not relaxed when the lawyer believes his cause is just. In fact, it matters *most* in cases like this one, where feelings run highest.

As such, although I do not additionally impose sanctions under Rule 11(b)(1), I nonetheless admonish Mr. Hamed that pleadings he files in court must be confined to the facts and law necessary to state his clients' claims. Whatever Mr. Hamed's convictions—and whatever the merits of those convictions in public debate—they do not relax the pleading standards. Future filings that use the Court's docket as a platform for political invective may warrant further consequences.

**d. Amount of Sanctions**

Having determined that limited sanctions are appropriate under Rule 11(b)(1) and 11(b)(2), the Court is left to determine what they should be. The

moving Defendants request broad relief, including recovery of the fees incurred in defending against Plaintiff's claims and preparing the sanctions motions. Koum, for example, seeks the fees incurred in its motion to dismiss, its sanctions motion, and its opposition to Plaintiff's request for additional time to effect service. (Doc. 100 at 31).

Rule 11 is not primarily compensatory. *O'Boyle v. Sweetapple*, No. 14-CV-81250-KAM, 2016 WL 9559919, at *3 n.6 (S.D. Fla. Feb. 21, 2016) (noting that "Rule 11 sanctions are deterrent, not compensatory"). A sanction must be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). And although attorney's fees may be awarded to a successful movant, the Rule expressly permits an award of either all or "part" of the reasonable fees directly resulting from the violation. *Id.*

Several considerations favor restraint. Plaintiff's claims against her former employer presented a genuine employment dispute; the Court does not find that this lawsuit as a whole was frivolous. Mr. Hamed did respond to the initial Rule 11 correspondence by narrowing the case: after the Milstein Defendants challenged the First Amended Complaint, Plaintiff removed three of the four claims previously asserted against them, leaving only the § 1985(3) claim. (Doc. 58

at 4–5). *Johnson* itself declined to impose monetary sanctions. And the Court has declined to find that Mr. Hamed pursued this action for the purpose of harassing Defendants.

But on the other hand, a non-monetary sanction would understate the problem. Mr. Hamed was repeatedly alerted to the deficiencies in the donor claims through Rule 11 notices and motions. He then received a direct warning in *Johnson*: a federal court considering materially similar claims brought by the same attorney held that the donor theories violated Rule 11. Yet the claims remained pending, and Mr. Hamed continued to advocate them. The Eleventh Circuit has made clear that Rule 11 does not permit an attorney to insist upon a contention after it has become objectively untenable. *Turner*, 91 F.3d at 1421–22. Simply put, the Court is now obliged to address the pattern of misconduct that did not yet exist when Judge Cooper imposed the non-monetary sanction, and the penalty has to be progressively more punitive. But the six-figure punishment Defendants seek is not called for.[4]

[4] Plaintiff argues that no monetary sanctions should be awarded at all because the employment discrimination claims survive to some degree and thus the litigation would have proceeded in some fashion regardless of the frivolous conspiracy claim. (*See e.g.*, Doc. 97 at 4–5). Plaintiff relies on *Fox v. Vice*, where the Supreme Court held, in the context of awarding attorney's fees to a defendant for

Under these circumstances, the Court concludes that a modest but meaningful monetary sanction is sufficient. The Court therefore awards $2,000 to (1) the Milsteins; (2) Fromer; and (3) Koum, payable by Mr. Hamed. The Court assumes that this is substantially less than the fees and costs that Defendants incurred, but it is sufficient to serve Rule 11's deterrent purpose without transforming sanctions into an unwarranted fee-shifting award. Additionally, the Court imposes the sanction on Mr. Hamed, not Plaintiff. The violations identified above concern Mr. Hamed's legal and pleading obligations—particularly the decision to continue advocating the donor-based theories after their deficiencies had been repeatedly identified. Nothing in the present record establishes that Plaintiff herself was responsible for those legal judgments. And to the extent the

---

a frivolous claim under 42 U.S.C. § 1988, that the party could recover only "the portion of his fees that he would not have paid but for the frivolous claim." 563 U.S. 826, 836 (2011). So, when there are frivolous and non-frivolous claims, the defendant can recover fees "incurred because of, but only because of, a frivolous claim." *Id.* Assuming *Fox* applies in the Rule 11 context, Plaintiff's argument fails because the only claim asserted against the Donor Defendants is the frivolous conspiracy claim—there are no non-frivolous claims brought against the Donor Defendants.

violation rests on Rule 11(b)(2), the Rule in any event prohibits imposing a monetary sanction on a represented party. Fed. R. Civ. P. 11(c)(5)(A).[5]

## V. Conclusion

For the reasons stated above, the motions for sanctions filed by Weiden, (Doc. 40-1 at 19-22), and by Merona, (Doc. 98), are each **DENIED**. The motions for sanctions filed by the Milsteins, (Doc. 47), Fromer, (Doc. 92), and Koum, (Doc. 100), are each **GRANTED IN PART**.[6]

As a sanction under Rule 11, Plaintiff's counsel, Abdel-Rahman Hamed, is **ORDERED** to pay $2,000 total to the Milsteins (Adam Milstein, Gila Milstein, and the Adam and Gila Milstein Family Foundation); $2,000 to the Ann and Robert Fromer Charitable Foundation Inc.; and $2,000 to the Koum Family Foundation; for a total monetary sanction of $6,000.

---

[5] Plaintiff's counsel makes passing reference in several of his briefs to the possibility that defense counsel may have engaged in sanctionable conduct by seeking sanctions. (*See, e.g.,* Doc. 58 at 20–22). To the extent he is seeking Rule 11 sanctions, the request is not set forth in a separate motion, and it is procedurally improper. Fed. R. Civ. P. 11(c)(2). Moreover, there is absolutely no basis to find that the requests for sanctions in this case are in any way themselves sanctionable—the requests all have a reasonable basis and, as noted above, are granted in part.

[6] Koum's motion is granted only to the extent it seeks sanctions under Rule 11.

**IT IS SO ORDERED,** this 30th day of September, 2026.

____________________________________
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE